United States v. Brian Mahoney Morning, Your Honors. Mark Shea for Mr. Mahoney. First thing I'd like to make clear is that there was not clear and convincing evidence that Mr. Mahoney is a dangerous person and that essentially as thoughtful a jurist as Chief Judge Saris is, she's just wrong in this. And it's a concerning situation because we have a man who's picked up for a non-violent violation, deemed not competent by the Federal District Court of New Hampshire, and then finds himself in Devens, committed, and has now been there for upwards of I think 64 months. And, you know, the government's expert here in testimony, and I'm going to focus more on that just because Chief Judge Saris credited his testimony more than the defense expert, but his own testimony was that Mr. Mahoney's last physical assaultive offense was in 1997. And what we have is a situation, too, where they're trying to link the dangerousness by looking at and I think importantly, Mr. Mahoney is diagnosed with bipolar disorder, and this again is by the government's expert, for the first time when he is sent to Devens for a competency evaluation. Counsel, weren't there, in terms of more recent history, there have been incidents, disciplinary issues at Devens itself, and I understand there are explanations for that, but don't those more recent incidents raise concerns about, renewed concerns about that prior history of assaultive conduct and threatening conduct, or violent outbursts, if you will? No. And here's why. Because you can't send a person somewhere and make them sicker and then say we're concerned about him being violent. You know, I think it's important to note that when he gets there, Dr. Kissin, the first person from Medical Center Devens who evaluates him, she finds him to be a bipolar 2, and that is a less serious category than bipolar 1, and it's explained by their expert at JA 2, 118, and 188. But basically, you don't have full-blown manic episodes, you have a kind of an excellent job of bringing this out in his cross-examination. You have a gentleman, Mr. Mahoney, who's sent, he's a bipolar 2, less serious, they then start putting him into, when there are minor incidents, they put him into lockup for 23 hours a day in a small cell, and eventually turn him into bipolar 1, and now they say, well, we've got to hold him because he's dangerous because of how he's acting at the institution. You know, and they- I mean, that's an interpretation of the evidence, but it's not the interpretation to which the government's psychiatrist vouchsafed at the hearing, nor was it the way that the trial judge saw the facts. And you've got, we can't guess at what might have happened here. We've got to review what Judge Saras found based on a fairly rigorous, from your point of view, standard. You've got to show to us some clear error on her part, not merely that someone else may have looked at the facts differently. But the clear error to me is to say that this man is dangerous when he doesn't have any physically assaultive offenses since 97. But as Judge Lopez pointed out, he's got a whole history before and after Devens of unacceptable behavior. He's got domestic incidents, he's got violations, he's got restraining orders out against him, he's got outbursts in the courtroom. You say that some of that is attributable to his confinement, but that's not what the psychiatrist upon whom Judge Saras relied says. Well, he actually does under cross-examination acknowledge some of that. Let me take your points one by one. So as to the restraining orders, the last restraining order that I see in his record is from 2003. All of the restraining orders, either from 2003 or earlier, they're brought in Massachusetts. There is not a single criminal offense in Massachusetts for violation of any of those restraining orders. There is, I'll acknowledge, a violation of a protective order in 2005, the only time a protective order was violated. And I'm going to acknowledge a little bit of ignorance here in that I don't know that New Hampshire can bring a violation of a protective order for a Massachusetts restraining order. So it looks to me like that protective order, whatever it is, grew out of some probationary situation in New Hampshire. That's, I'm theorizing there, I acknowledge. But it doesn't look like he ever violated the restraining orders. But the government's expert spent a lot of time with your client and reviewed a lot of his history with him and was struck by the fact that your client dismissed the significance of this history of domestic violence and restraining orders. He refused to acknowledge the significance of it, refused to accept any responsibility for that history. And that was suggested to him that he does not have an appreciation in the past of how dangerous he had been perceived to be, how other people had reacted to him, and raised concerns that he simply does not appreciate the consequences of some conduct. And that, in the psychiatrist's view, makes him at least in part a dangerous person. But that's if his, again, there's no conduct to dangerous other than some minor incidents in a correctional facility. And again, how about the idea that not a single call or effort was made to set up a plan that would put him in either a halfway house or some other place that might have been less problematic for his illness. It seems to me if they're going to claim this is a hospital, you know, they should be trying to make him well, not make him worse, so that they can come to court and say that he's in fact worse. And there was no plan to ever attempt to make this man well. And there are people who with mental illness are obviously made worse by correctional settings. And that if you remove them from the correctional setting, it's a less problematic behavior. How do you respond to Judge Selye's point about the judge's finding, expressed finding, based on her own percipient observations? What I would say to that is it goes back and predates Mr. Snyder. And Mr. Snyder, when he comes into the case, things are handled very nicely. And Mr. Mahoney, in fact, apologizes and conducts himself appropriately with Mr. Snyder. And through the course of, I think, three months long, the hearings are spread out. As to the particular incident, let's think of what happens. At the court hearing beforehand, the prosecutor mischaracterized Mr. Mahoney as a rapist. And he had been acquitted of that. And he wasn't, in fact, a rapist. And so you have that heading into the situation where he did act out in court. You then, at that same court hearing, have Mr. Watkins, who he seemed to have some relationship with, now being conflicted out of the case. And Mr. Mahoney's family, or Mr. Mahoney, it's a little unclear, had hired a private lawyer. The private lawyer felt he couldn't work with Mr. Mahoney, so Mr. Mahoney's without counsel. And so it creates a situation where he's been accused of something he didn't do. And he has no lawyer. And so it was a difficult situation with someone with bipolar. And also, the other thing I'd point out is, he also knew at that point that Dr. Chenelle's report included misinformation regarding him. And that comes up with Mr. Snyder when Mr. Mahoney, Mr. Snyder and Mr. Mahoney are first before the court together. And so my point is, there were a lot of negative things going on that would have exacerbated that problem. But when he actually had counsel, when he had someone fighting on his behalf, when they were able to show that these were inaccuracies and to fix them, he was able to conduct himself appropriately. And I just hate to see a situation where someone is now being held because the institution is making him sick. And that's, well, I appreciate your time. Thank you. Good morning, Your Honors. May it please the Court. Abraham George, United States. There is no evidence in the record and no argument made at any point in this case, which is a lengthy, lengthy proceedings in the district court, at all that FMC Devins or anyone in the federal system has contributed to making Mr. Mahoney sicker. That has never even been articulated until right now in this court. And there's absolutely no evidence in the record of that whatsoever. Mr. Mahoney was diagnosed with bipolar disorder as early as 2008, 2009, before he was ever charged with violation of SORNA in the District of New Hampshire. In addition, Judge Saris found that not only did she find that his mental disease or defect was bipolar disorder, and that's uncontested, and was not raised in the briefs as an issue, that he also has antisocial personality disorder. Either one of those would be the basis for finding the first prong of Section 4246 was that there would be committee suffering from a mental disease or defect, as a result of which he was a substantial risk of bodily injury to another. So there's been no question at any point that Mr. Mahoney suffers from bipolar disorder. Judge Saris found he suffers from both bipolar disorder and antisocial personality disorder. And there's nothing in the record, nothing from Dr. Kriegman, that the federal system is contributing to making Mr. Mahoney sicker. Now, Judge Saris supportably found on four separate bases that the government had proved its case that Mr. Mahoney was dangerous. She looked at his extensive criminal history, and that criminal history goes virtually back to the time he became an adult. She looked at his courtroom behavior, she looked at his scores on the three risk assessment instruments, and she weighed the expert testimony. And she found Dr. Channel, the government's expert, far more credible than Dr. Kriegman. It wasn't a close call in this case. With respect to his criminal history, Judge Saris found that he had 34 adult criminal convictions, five for violent felonies. And Mr. Judge, give us credit for having read Judge Saris's decision. Yes, Your Honor. I mean, with all due respect, we don't need you to tell us what she said. Yes, Your Honor. Counsel argues that Mr. Mahoney only engaged in violent conduct post his arrest, by virtue of the fact that he was in federal custody. But there are ample examples of Mr. Mahoney acting out in court, both in New Hampshire, and in this district, without being in federal custody. And more fundamentally, the fact that Mr. Mahoney was unable to restrain himself when he was at Devins, Devins, excuse me, is no excuse. You are not supposed to engage in violent behavior, regardless of whether you're in custody at Devins, or in the courtroom, or on the street. And Mr. Mahoney has shown himself incapable of refraining from violent behavior and threatening incidents. It goes on and on with Mr. Mahoney. Counsel, the brief spent some time on this issue of competency determinations and this ongoing civil commitment. Now, is there, and the opposing counsel points out that this started with a stand trial, and then we get into these civil commitment proceedings. Is there, and he bears some responsibility for that, because he made decisions not to go forward with competency proceedings. But is there some way in which, should he change his mind on that, that the about this finding that he is dangerous and has to remain committed? Yes, Your Honor. And I think there's two answers, depending on how you approach it. In one sense, the statute clearly does not provide for a competency hearing for someone who is civilly committed. The competency hearing under Section 4241 takes place for pretrial detainees, people charged criminally. That's where the competency hearing occurs. In the criminal case, I understand, it has now been dismissed. It has, Your Honor, yes. So, 4241 does not provide any basis for a competency hearing in the future, unless he were charged with another crime. Yes, Your Honor, the government agrees fully. So, there's no entitlement to a competency hearing for someone who's been transitioned over to either 4246 or 4248. The other way to answer the question, though, is although he's not entitled to a competency hearing, he is entitled, as Your Honor points out, to an annual report from the facility director with a view towards his mental state and whether his mental state causes him to continue to be dangerous. So, it's not a competency evaluation, but it is a look into his mental state at the time, over the course of the previous year. And, indeed, there has been an annual report from the facility director in 2015. So, no, there's no look at whether he is competent, because the statute is clear that competency only pertains to those under Section 4241. There is, however, the ability to look into Mr. Mahoney's mental state as a civil committee, as it pertains to his future and is dangerous as things progress, not as it pertains to whether he would be competent to stand trial. And, as Judge Celia points out, in this particular case, there is no pending indictment. Now, Judge Ceres did originally, initially, excuse me, order a competency evaluation and cited United States versus Eckerd. But, for the reasons that I've gone through in my brief, which I'm happy to go into more, Eckerd does not control. It's a different situation. It's a situation where the defendant was charged in the District of Massachusetts, transitioned to Minnesota, where he was found not competent. He then moved, he appealed in this court to have his underlying indictment dismissed on the basis of the fact that he was found incompetent. And the court said simply, the holding was simply, there is no provision to dismiss the underlying indictment, simply because there's no competency provision in Section 4246. That's all this court said. That's the holding. There is no, and indeed, the statute is clear. The statute lays out that if you're under 4241, you're entitled to certain things. You're entitled to a report from the facility director as to whether you've regained competence. You're entitled to a different standard of evidence as to whether you're competent, a prominence of the evidence. Those who are under 4246, they're not, they're entitled to a burden of proof that's clear and convincing evidence. The facility director, as we went over, speaks, files his annual report that speaks to whether the committee is still suffering from a mental disease or defect, as a result of which he continues to be dangerous. So is there any difference between the first prongs of whatever the statute, 4241 and 4246? I don't believe so, Your Honor. It's exactly the same assessment? Yes, Your Honor. It's a mental disease or defect. But the difference is, does this mental disease or defect result in an inability to understand the nature and consequences of the proceedings and assist in your defense, which is 4241? Or does this mental disease or defect result in your release, if you were to be released, there would be a substantial risk of dangerousness to people or property? So perhaps that's a null set, that there are mental diseases that do one or don't do the other. But it is a different inquiry. And it does have a different standard of proof. And interestingly, the standard of proof is more onerous for the government in 4246. If there are no further questions, the government will rest on its feet. Thank you.